# UNITED STATES DISTRICT COURT
## District of Massachusetts

## Motion under 28 U.S.C. §2255 To Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody

**Name of Movant**   **Inmate Number**   **Criminal Docket Nos**

**Ashokkumar Patel**   **Federal Register 52458-424**   **4:18-CR-40027-001-TSH**

**Judge:  Honorable Timothy S. Hillman, United States District Judge**

**Current Confinement:**

Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI   02863

**UNITED STATES OF AMERICA   vs.   ASHOKKUMAR PATEL**

**District of Massachusetts**

**Judgment of Conviction was September 15, 2020**

**Length of Sentence is 40 Months**

**Nature of Offense:**

**Conspiracy to Commit Wire Fraud, Wire Fraud, Money Laundering**

**Plea:  Guilty**

**I did not testify at any type of trial.**

**No appeals have been filed**

**No other petitions, applications or motions have been filed in any court.**

FILED
IN CLERKS OFFICE
2021 JUN 21  PM 3: 04
U.S. DISTRICT COURT
DISTRICT OF MASS.

**Facts**

In August 2015, an FBI agent came to my home and showed me photos of me depositing money orders in the bank and made direct threats stating that I must cooperate. He further stated that my impending Green Card was in jeopardy if I did not willingly cooperate. His specific quote was "your green card is on the way, right?" "You must cooperate if you want the government to help you."

The history behind this action was that I worked for a person in 2013 and 2014 who was based in India and who paid me $300.00 a day to process bank transactions for him. His premise, which I believed, was that he was moving money to the United States to help his uncle purchase multiple liquor stores. The process was simple: I purchased prepaid debit cards, gave him the information, he loaded them with funds, and then I purchased money orders with the cards. This was extremely timely and helpful to me as I had just lost my job at Subway and this new job paid me $200.00 more per day than I had been making at my previous job. Of significance, I was determined to help my father pay his gambling debt. My father was a lifelong alcoholic and gambler, and I was desperate to address this problem and get him on a pathway away from these addictive practices.

The position of the FBI was that I was part of an IRS scam whereby an India based call center threatened innocent Americans with tax payment threats and executed schemes where the taxpayer made payments to fraudulent sources. I had no idea about this scam, nor did I believe I was part of such. I simply was working for a man following directions but was unaware of the scheme or the methods this man utilized to obtain the money being used to buy the money orders. Further, there was no connection whatsoever between me and any of the victims, the call center, or anyone else involved in this scheme. The prosecution insisted that I knew what I was doing. My position from the very start was that I had no idea of the nature of the criminal activity that was occurring.

In 2015, I met with the prosecutor on two occasions. The purpose was for me to provide them with vital information in exchange for what they referred to as a 5K1 agreement. They later told me that the information I provided was not helpful to them and they would only proceed with the 5K1 if I chose to change my story.

Then, in 2017, I was arrested in Chicago for wire fraud and money laundering. I posted bond and traveled to Boston for an initial hearing. I met my attorney, Jamiel Allen who promptly advised that we would waive the preliminary hearing without any explanation as to why. His position was that I "should not worry" because this case will drag on for a couple of years. He further directed that I would not attend my arraignment or any other hearings. At no time did Allen object to prosecutorial statements or allegations. He made no effort whatsoever to infuse my explanation and my side of the story into the discussions that took place. As a result, my position of not being knowingly attached to the scheme was never brought forth. My position was that I would take this case to trial. He and two other attorneys came to Chicago to convince me to

2

accept a plea and not go to trial. He never wavered from his position and he chose to not prepare for a trial. He had no interest in going to trial. Two months before the trial date he made an impassioned appeal for me to accept a plea. I refused because it was only through a trial where I believed my side of the story and the actual facts would surface. His response was to ask for a Rule 11 hearing. His promise, (I have written emails as proof) was that this pathway would grant me a three point sentence guideline reduction and I would serve just 44 months. I accepted this recommendation. It was my understanding that if I fired him my only recourse would be to hire a private attorney at my expense, which I could not afford. I did not know I was entitled to a new court appointed attorney. Otherwise, I would have fired him much earlier.

At the Rule 11 meeting it was agreed that the dollar amount would be 446,000 and the sentence recommendation would be 41 months. The day before the Rule 11 hearing Allen informed me that the dollar amount was raised to 687,000 but that this number did not mean anything, and I was not to worry because the dollar amount had nothing to do with the sentencing guidelines. His statement was that this dollar amount was "just a moving number." At the hearing I pled guilty to everything I was charged with. I then found out that my guideline range was changed to 63-78 months. When I questioned my attorney about this, he told me he made a calculation error (I have this email in my possession). He then removed himself from the contact with me and another attorney represented me at sentencing. It was apparent to me that his motive was to quickly dispose of my case because he had another job waiting for him in Arizona. This, along with his lack of experience with fraud and trial cases, prompted me to fire Allen.

My new attorney, Vikas Dhar immediately raised my hopes of a "probation only" sentence upon receiving his $15,000.00 retainer. It was apparent that he was not doing anything to work toward a solution to my case. Therefore, I offered him more money. He immediately asked for another $5,000.00 based on his statement that there were going to be "continuances" due to the COVID situation and because of my cooperation agreement that led to more investigative actions in the Chicago area. These steps were supposed to be part of the original retainer, but I gave him the extra $5,000.00 in an effort to motivate him to work on my case. I never received any receipt for payments that were made to him. As stated, he was hired based on his statements of "false hope" for a probation sentence. I learned later that he knew probation or a sentence less than 12 months was not feasible. I was totally misled.

My new attorney, knew I needed grounds to withdraw my plea and knew I was misled by public defender Allen. However, he continued on a similar path of defense by promoting the Rule 11 solution with the 41 month agreement. As stated, Allen chose to not challenge any evidence or assertions made by the prosecution. He clearly knew that I would have insisted on going to trial had I been made aware of the 63-78 month sentencing recommendation because, at a minimum, I had a chance of a hung jury decision. He simply followed all the directives and orders of the prosecution. When the PSR was made available, I pointed out numerous incorrect statements, but no effort was made to correct the PSR. These included a miscalculation of my points amongst several other incorrect statements that I believe were factors in the final judgment rendered by

the Court. In sum, he attempted to coerce me into a plea agreement and when I refused, he coerced me into the Rule 11 process.

Following this, at sentencing, Dhar failed to object to the relevant conduct issues despite my clear directions and explanations. There were some 13 points asserted by the prosecution that were fabricated or incorrect, but none were objected to. There was a false statement of dollar amounts made by the prosecution that caused the judge to postpone the first sentence hearing. Furthermore, he never reviewed the key DVD's with me which would have assisted in the determination of the dollar amount. And, he did not argue the fact that there were only three actual victims directly involved with any loss plus the fact that only a portion of the total loss of the three was attributable to me. However, the prosecution insisted that I carry the burden of the total loss. Based on these facts, the prosecution's enhancement for the high number of victims involved would have not become a sentencing factor. At sentencing Dhar also failed to object to the prosecution's fantasy story that the real amount involved was $11 million and I was getting a good deal with just $880K being determined as the amount.

The judge sentenced me to 40 months, a downward departure. I believe that had the proper sentencing range been established to begin with, the judge would have sentenced me to a much lower term.

After sentencing and after all the trips and extra effort to cooperate, it turned out that I received no support from counsel to acquire a fair sentence adjustment following the 5K1 agreement. The prosecutor clearly stated that if my information led to arrests, which it did, I would receive a substantial sentence reduction. She reneged on that statement later by saying the information had to lead to a conviction. I was clearly misled by the prosecutor. Following sentencing, counsel chose to not explain appeal options or appeal rights. He offered no direction, information or advice.

**Procedural History**

| | |
|---|---|
| 18 U.S.C. § 1343 | **Conspiracy to Commit Wire Fraud** |
| 18 U.S.C. § 1343 | **Wire Fraud** |
| 18 U.S.C. § 1956 | **Money Laundering** |

## My Counsel was Constitutionally Ineffective

To prove that counsel was ineffective, I must show that Jamiel Allen's and Vikas Dhar's performances were deficient and that I suffered prejudice from the deficient performance.

*Strickland v. Washington*, 466 U.S. 668 (1984), governs the determination of ineffectiveness at trial, sentencing and appeal. Counsel's assistance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Fifth Circuit has described that standard as requiring that counsel "research relevant facts and law." *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *United States v. Williamson*, 183 F.3d 458,462-63 (5th Cir. 1999)). "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.* At no time was the prosecutor challenged regarding the facts as I described them and in accordance with the documented proof that I provided. There are numerous instances where this occurred.

To prove prejudice, "the defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Proof that a lesser sentence would have been imposed absent counsel's error is sufficient, as "any amount of actual jail time has Sixth Amendment significance," *Glover v. United States*, 531 U.S. 198, 203 (2001), which constitutes prejudice for purposes of the *Strickland* test.

### A. My Counsel was Ineffective for not Properly Informing Me of the Consequences of the Guilty Plea.

My attorneys, Mr. Jamiel Allen and Mr. Vikas Dhar, took the position from the very start of their representation that I should not fight against the government and that it would be better if I would plead guilty to the charges against me. Their position at that time was that it would be better for me if I just "got this over with." Allen and Dhar needed to delve into the actions of the other people involved. In so doing, they would have clearly determined the exact role I played. Rather, they chose to simply accept the allegations of the prosecutor. Allen openly stated that due to an impending new job, he had no time to spend on my defense. My side of the story needed to be told and explained, in full, to the prosecution. Had that been done there would have been a clearer, accurate account of what actually occurred. This was critical to my defense because without it I was deemed as a major player in the overall scheme resulting in a sentence that is ill proportioned to my degree of guilt.

Allen and Dhar decided that it would be best to not offer any evidence or arguments to defend me. There was significant evidence that needed to be presented. Rather, I was presented with a plea agreement and was made to feel that I had no choice but to sign it. Further, the details of its content were not reviewed, discussed, or explained to me. There is no doubt that I was not informed of the contents of the plea and in particular, I did not have any idea of the magnitude of sentence that I would face upon signing the plea agreement. Had I been aware of the contents of the agreement and the potential of impact that it would have against me, it would have further strengthened my resolve to

5

take this case to trial. The solution to my objection was to coerce me into entering into a Rule 11 process. Upon succumbing to this pressure, I later learned that the sentence guidelines were very different than what counsel had promised.

One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty. An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. Apprising a defendant about his exposure under the sentencing guidelines is a necessary part of this process … "Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005). It is submitted that Allen, and later on, Dhar rendered ineffective assistance by inducing me to plead guilty based on the content of an agreement that I was not made fully aware of. An attorney's failure to properly inform the client about his sentencing exposure may constitute ineffective assistance. See *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir.1995) ("[f]ailing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*"). See also *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003) ("By grossly underestimating the defendant's sentencing exposure . . ., counsel breaches his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." ). Allen and Dhar never bothered to argue a single point in my favor and they specifically chose to not file any objections to the prosecutor's allegations. This was totally unacceptable, but it is the course of action that they took. If Allen and Dhar had aggressively defended my position, with or without researching the evidence, I would never have been subjected to the sentence I received. Thus, it can be said there is a strong probability that if not for counsel's errors the proceedings would have been different. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## B. My Counsel was Ineffective at Sentencing for failing to object to the use of the Relevant Conduct.

Jamiel Allen and Vikas Dhar should have been aware that a possibility existed whereby the prosecutor would aggressively attack me with various charges. Had Allen and Dhar raised objections to the relevant conduct of the prosecutor, the government would have then been obligated to prove by preponderance of the evidence that the charges were valid and that no coercion or promises had occurred. The Court simply sentenced me on the basis of the relevant conduct enhancements since Allen and Dhar failed to object and failed to provide evidence that defended my position. Thus, I was never given an opportunity to be heard on this issue. It is well settled that at sentencing, the district court is required to resolve specifically disputed issues of fact if it intends to use those facts as the basis for its sentence. *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990). The sentencing guidelines also explicitly require that the sentencing court resolve disputed sentencing factors, regardless of whether the court ultimately determines that departure from guidelines is warranted. *United States v Burch*, 873 F2d 765 (5th Cir. 1989). It is submitted that reasonably competent counsel would have been aware of the well established precedent of the Fifth Circuit that if counsel would have objected to the

6

prosecutor's assertions then the District Court is then required to address a defendant's objections. Allen and Dhar demonstrated a complete lack of familiarity with the Guidelines, or chose to ignore the requirements dictated in the Guidelines. There can be no sound strategy for counsel's failure to object to the use of the relevant conduct. Where defense counsel fails to object to an improper level of understanding and agreement under the Sentencing Guidelines, counsel has rendered ineffective assistance. *Jansen v. United States*, 369 F.3d 237, 244 (3rd Cir. 2004). See also *Trass v. Maggio*, 731 F.2d 288, 293 (5th Cir. 1984) (holding that ignorance of relevant law constitutes an "identifiable lapse in constitutionally adequate representation"). There was simply no evidence that I would have been found guilty of playing the role that my sentence was based on if the charges had been objected to.

In the circumstances of this case, Dhar's failure to object to the use of relevant conduct at the time of sentencing must be deemed to constitute ineffectiveness. It is obvious that Dhar was not employing any strategy when he failed to object to the relevant conduct and had I understood the nuances of the United States Sentencing Guidelines I would have requested that Dhar object to the rendered sentence. However, I did not understand the inner workings of the Guidelines and Dhar never explained any of the issues regarding how the relevant conduct would result in a prison sentence of this magnitude.

As previously mentioned, Allen and Dhar did not file any written objection, nor did Dhar make any oral objections to the use of the relevant conduct at the sentencing hearing. Had Dhar raised the issue at sentencing, even if it were rejected by the Court, the issue would have at least been preserved for appellate review. Accordingly, it is submitted that reasonable counsel would have brought the relevant conduct objection to the attention of the sentencing court and if not for counsel's failure to object, the outcome at sentencing would have been different.

### C. My Counsel was Ineffective for Failing to Adequately Consult with me about my Right to Appeal or Filing a Notice of Appeal.

*Roe* v. *Flores-Ortega,* 528 U.S. 470 (2000), concerned an ineffective assistance of counsel claim for failure to file an appeal. Flores-Ortega was charged with murder by the State of California and a public defender was appointed to represent him. Flores-Ortega entered an *Alford* plea - denying guilt of the crime but at the same time admitting that there was sufficient evidence to convict him. Flores-Ortega was sentenced and at the hearing, the trial judge informed him of his right to appeal and the time (60 days) within which to file an appeal. Although the public defender wrote "bring appeal papers" in her file, she failed to file a notice of appeal within the delay. During the first 90 days after sentencing, Flores-Ortega was unable to communicate with counsel. About four months after sentencing, he tried to file a notice of appeal, which was rejected as untimely. Flores-Ortega sought state habeas corpus relief but was unsuccessful. He then filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 alleging constitutionally ineffective assistance of counsel based on his attorney's failure to file a notice of appeal on his behalf after promising to do so. Ultimately, the United States Supreme Court

7

reviewed the case to resolve a conflict in the lower courts regarding counsel's obligation to file a notice of appeal. The Courts of Appeals for the First and Ninth Circuits had followed a bright-line rule that counsel was per se deficient for failing to file a notice of appeal unless the defendant specifically instructed the attorney not to file, while the Second Circuit held that counsel had no duty to file a notice of appeal unless requested by the defendant. The rules in other circuits fell somewhere between. The starting point for the Court's analysis was *Strickland v. Washington*, 466 U.S. 688 (1984), which set forth the test for a defendant claiming ineffective assistance of counsel. Under *Strickland*, a defendant must show (l) that counsel's representation "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. The Court determined that the starting point to determine whether counsel has performed deficiently in cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken is whether counsel in fact consulted with the defendant about the appeal. Consult has a very specific meaning - "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." *Id.* 528 U.S. at 478. If counsel has not consulted with the defendant, then the court must decide whether counsel's failure to consult constitutes deficient performance. The Court declined to extend a bright-line rule that counsel must always consult with the defendant regarding an appeal. Instead, it adopted the following rule: Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* 528 U.S. at 480. The second prong of *Strickland* requires the defendant to show prejudice from counsel's deficient performance. The Court held that to show prejudice when counsel fails to file an appeal, the defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. *Id.* 528 U.S. at 484. Further, when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal. *Id.* Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will be highly relevant in making the determination of prejudice. *Id.* 528 U.S. at 485-86. The Court then noted that proof of deficient performance and proof of prejudice could in some cases both be satisfied by the defendant showing nonfrivolous grounds for appeal. *Id.* At 486. The case was remanded. On remand, the district court denied the writ of habeas corpus. Flores-Ortega appealed. In an unpublished decision, the Ninth Circuit reversed and remanded with instructions to the district court to enter a conditional writ of habeas corpus. The Ninth Circuit, following the dictates of the Supreme Court, concluded that Flores-Ortega had reasonably demonstrated an interest in filing an appeal, thereby creating a duty for the public defender to consult with him on whether to file an appeal. *Flores-Ortega v. Roe*, 39 Fed.Appx. 604 (9th Cir. 2002). As a matter of law, prejudice was presumed because the public defender had a duty to consult with Flores-Ortega and failed to do so. The presumption of prejudice together with the evidence in the record demonstrated that there

was a reasonable probability that, but for counsel's deficient failure to consult with Flores-Ortega about an appeal, he would have timely appealed.

In this case, to determine whether Dhar provided ineffective assistance, the Court must decide whether counsel had a duty to consult with me about an appeal because either (1) a rational defendant would want an appeal (for example, because there are non-frivolous grounds for appeal), or (2) that I reasonably demonstrated that I was interested in appealing.  In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. See *Flores-Ortega*, at 480. Although I did plead guilty in this case, the Rule 11 agreement contained no such appeal-waiver provision.

On the day of sentencing, Dhar did not discuss any possibility of an appeal with me. Dhar, as an experienced attorney, should have recognized that I had a nonfrivolous ground to appeal based on the charges that existed due to knowledge that there was available testimony to exonerate me, or at least partially exonerate me, it cannot be said that any appeal would have been frivolous and would have been an appeal that no rational defendant would have taken. Criminal defense counsel is not burdened by a general duty to perfect an appeal of every criminal conviction. But counsel is constitutionally required to fully inform the defendant as to his appellate rights. Counsel's duty to a criminal defendant in this context requires more than a passive acceptance of what the court chose to do. The Constitution requires that the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal. Counsel's failure to so advise a defendant once a conviction is entered falls below prevailing professional standards and is constitutionally deficient performance within the meaning of *Strickland  White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999).  As Fifth Circuit precedent makes clear, the Constitution requires that the client be advised not only of the right to appeal, but also of the procedure and time limits involved and of the right to appointed counsel on appeal. Dhar's failure to advise me of the foregoing constitutes deficient performance within the meaning of *Strickland*. Had Dhar bothered to adequately consult with me after sentencing and explain to me how the Court arrived at the sentence I received, Dhar would have known that I desired to appeal. Counsel's performance deprived me of an appeal I otherwise would have taken. It is submitted that any rational defendant would want to appeal if they were in my position.  Because of what occurred Dhar was under a constitutional obligation to consult with me about an appeal. In short, I would have appealed "but for counsel's deficient conduct" in failing to consult.

### D. I Suffered Prejudice Due to Trial Counsel's Ineffectiveness.

To prove prejudice, "the defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"

*United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2001) (quoting *Strickland United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). It is clear that, but for counsel's unreasonable failure to object to the prosecutor's stance, I would have at the very least had an opportunity to obtain a lesser sentence. And, of course, "any amount of actual jail time has Sixth Amendment significance," *Glover v. United States*, 531 U.S. 198, 203 (2001), which constitutes prejudice for purposes of the *Strickland* test. See, e.g., *United States v. Franks,* 230 F.3d 811, 815 (5th Cir. 2000) (three extra months equals prejudice). I am quite aware that conclusory assertions of prejudice are insufficient to satisfy the second prong of *Strickland*, see *Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir.1994), however, *Glover* makes clear that any additional jail time can be prejudicial. It is submitted that Dhar's performance at sentencing did not fall within the "wide range of reasonable professional assistance." See *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Because a reasonably competent attorney would have objected to an improper relevant conduct situation, counsel's performance fell below an objective standard of reasonableness. See *Strickland*, 466 U.S. at 687. Had the Court sustained such an objection, a revised sentencing range would have provided for a sentence of significantly less time. See *U.S. Sentencing Guidelines Manual* (2006 ed.). Again, as *Glover* clearly teaches, any amount of extra time in prison can constitute prejudice. In addition, it is submitted that Dhar was constitutionally deficient with respect to his "consultation" under *Roe* and that prejudice resulted to me as a result of such. Regardless of any other circumstances that may have occurred in these proceedings, a defendant who claims that counsel's deficient performance actually deprived the defendant of the right to appeal, "need not establish -- as a prerequisite to habeas relief -- that he had some chance of success on appeal." *White v. Johnson*, 180 F.3d 648, 652-53 (5th Cir. 1999). In sum, my attorney provided ineffective assistance, and I was prejudiced as a result.

**Conclusion**

My counsel failed to object to the process utilized by the prosecution to obtain my sentence guideline range, failed to pursue appropriate defense support by not presenting the facts, failed to explain the contents of the plea agreement and properly advise me of the potential outcome of the plea agreement, failed to explain the guideline range attached to the Rule 11 agreement, failed to inform the prosecutor on a timely basis of my true intent in the actions that were taken by me, failed to object to relevant conduct issues at sentencing, and by failed to advise me of my appeal rights or to file a notice of appeal on my behalf. My counsel's representation fell below the standard of reasonableness, and the ineffective assistance of counsel caused me substantial prejudice. I should be afforded the relief I now seek. My sentence should be vacated, and I should be sentenced anew. The new sentence should reflect an appropriate reduction to compensate for this ineffective representation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

06|16|21         Ashokkumar Patel         A.P.P.